EDWARDS, Judge.
This is a suit by Baton Rouge General Hospital for a debt allegedly owed by the husband of a former patient. From a judgment in favor of plaintiff, defendant has appealed. We affirm. The defendant in this case is Phebus N. Hotard. On April 16, 1976, his wife, Katherine Hotard, was admitted to the Chemical Dependency Unit of *370 the Baton Rouge General Hospital.[1] When Mrs. Hotard was released the hospital’s bill totaled $2,779.15. Mr. Hotard’s insurer paid $1,654.15, leaving a balance due of $1,125.00.
After efforts to collect this amount proved unsuccessful, Baton Rouge General filed suit against Phebus and Katherine Ho-tard. A preliminary default judgment was entered against Katherine Hotard and was later confirmed and made final by the district court. Phebus Hotard filed an answer to plaintiff’s petition. He alleged that his wife’s stay in the Chemical Dependency Unit was without his consent and therefore the debt was not a community obligation. Phebus Hotard also filed a reconventional demand against Baton Rouge General in which he alleged that the hospital had engaged in illegal collection methods.
The trial court concluded that the debt owed to the hospital was a community debt and rendered judgment in favor of plaintiff in the amount of $1,125.00 plus legal interest from the date of judicial demand until paid.[2] Defendant has taken a suspensive appeal from the judgment of the district court.
Defendant asserts that the trial court erred in finding that the debt was a community debt. Appellant contends that he orally agreed to his wife’s admission to the hospital only upon the condition that certain members of his wife’s family not be allowed to visit her. Mr. Hotard testified at trial that he felt that these people were trying to break up his marriage. Mr. Ho-tard encountered his wife’s sister and other members of her family at the hospital on one occasion while his wife was staying there and an argument and altercation ensued. Appellant testified that after the disturbance at the hospital, he was told that he could not come back to see his wife. He then requested that she be discharged since the hospital had broken its agreement not to allow visits from her family. He was informed that no patient could be released without a doctor’s order. Mr. Hotard testified that he then went to the office of Dr. Van Saye, the doctor that he thought might have admitted Mrs. Hotard to the hospital. Dr. Saye told him that he did not remember admitting Mrs. Hotard, but that if he did he would call the Chemical Dependency Unit and tell them to release her. Mr. Hotard testified that Dr. Saye did call and requested Mrs. Hotard’s release.[3]
Appellant asserts that the trial court erred in finding the debt to be a community obligation. He relies on LSA-C.C. art. 1786[4] which provides, in pertinent part, as follows:
“The authorization of the husband to the commercial contracts of the wife is presumed by law, if he permits her to trade in her own name; to her contracts for necessaries for herself and family, where he does not himself provide them; and to all her other contracts, when he is himself a party to them.”
Appellant contends that he had never failed or refused to furnish necessary medical treatment to his wife and therefore she did not have .the authority to bind the community.
The trial court did not err in finding that the amount owed the hospital was a community debt. In this case there is no need to rely on LSA-C.C. art. 1786 as authority for the wife to bind the community, because the evidence is undisputed that Mr. Hotard personally contracted with Baton Rouge General for his wife’s treatment at the Chemical Dependency Unit. Mr. Hotard *371 testified that he went to the hospital and made arrangements for his wife’s admission. However, he asserted that his agreement to have her admitted was based on the condition that her relatives not be allowed to visit.
Linda Alumbaugh, treatment director of the Chemical Dependency Unit, testified at trial. Alumbaugh was employed as director of nurses at the Chemical Dependency Unit during Mrs. Hotard’s treatment. She testified that Mrs. Hotard was accompanied by her husband at the time of her admission. Alumbaugh testified that Mr. Hotard was told at the time that the Chemical Dependency Unit would not agree to the restrictions which he sought to impose on his wife’s visitors. She further testified that Mrs. Hotard was admitted after Mr. Hotard was told that his conditions would not be agreed to.
It is the function of a trial court to resolve questions of the credibility of witnesses. An appellate court must give great weight to a trial court’s factual conclusions based upon its determination of credibility. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Aleman v. Favret Co., Inc., 349 So.2d 262 (La.1977); Canter v. Koehring Co., 283 So.2d 716 (La.1973). In this instance, the trial judge apparently chose not to believe Mr. Hotard’s claim that his wife was admitted subject to his conditions. Such a finding is not manifestly erroneous.
The trial court was correct in finding that Mr. Hotard was personally liable for the hospital bill. He incurred personal liability by accompanying his wife at the time of her admission and making arrangements for her admission with the hospital. Thus, we find it unnecessary to discuss plaintiff’s argument relative to the wife’s authority to bind the community for necessaries which the husband does not provide.
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against defendant-appellant, Phebus N. Hotard.
AFFIRMED.

. On March 18, 1977, Phebus Hotard was granted a judgment of separation from bed and board on his petition which was filed May 24, 1976.

. The judgment signed by the trial judge makes no mention of the disposition of the plaintiffs reconventional demand, although, in his oral reasons for judgment, the trial judge indicated that the reconventional demand would be dismissed.

. In his deposition, Dr. Saye testified that he was unable to recall making such a phone call.

. LSA-C.C. art. 1786 was repealed by Act No. 709 of 1979. However, the facts of this case arose in 1976, well before the effective date of that Act.