GARRISON, Judge.
This case is based on a suit on an open account in which the plaintiff, Louisiana Wholesale, sued the defendant, Classique Lighting for an outstanding balance of $3,367.25 for merchandise sold and delivered to the defendant by the plaintiff. The defendant then filed a reconventional demand against the plaintiff for $15,000 claiming that the merchandise ordered from plaintiff was either unusable or different from that ordered and that this problem caused defendant embarrassment, humiliation, loss of goodwill with customers and undue expense for storage of the unsatisfactory merchandise. After hearing testimony from both parties, the trial judge entered judgment for the plaintiff in the amount of $3,367.25 plus legal interest from date of judicial demand and all costs. The trial judge also dismissed the defendant’s reconventional demand and denied the plaintiff’s request for attorney’s fees. Defendant now appeals.
This lawsuit involves two different situations in which the defendant, a company engaged in the retail and contract sales of kitchen cabinets, lighting and appliances, specially ordered kitchen cabinets from the plaintiff, a wholesale company. In the first situation, Hugh Lemoine, president of the defendant company, placed a special order with the plaintiff on the telephone for some cabinets manufactured by the Kabinart company. Testimony at trial indicated that the retailer is solely responsible for measurements given to the wholesaler in ordering these cabinets. Upon the arrival of the cabinets, the defendant discovered that one of the cabinets was the incorrect size for the job for which this merchandise was ordered. The defendant then advised the plaintiff that it would need another cabinet in the correct size to complete this particular job. Because the additional cabinet needed was not in the plaintiff’s stock, it also had to be specially ordered. When this cabinet had not arrived after six weeks, the defendant informed plaintiff that it could wait no longer and that it would have to replace all of the cabinets with a brand that could be obtained immediately. The defendant attempted to return the specially ordered cabinets to the plaintiff for a refund but was informed that it is plaintiff’s policy not to accept returns of specially ordered merchandise. Plaintiff did, however, credit the defendant’s account for certain cabinets that had been damaged.
In this appeal, the defendant claims that the receipt of merchandise from the plaintiff was conditioned upon the receipt within a reasonable time of all of the items necessary to complete the particular kitchen. The defendant also contends that, in addition to the incorrectly sized cabinet that had to be replaced, another cabinet which was allegedly ordered by the defendant in the original order was not delivered at all.
Plaintiff argues that this sale was not contingent upon the suspensive condition *285 alleged by the plaintiff. According to the plaintiff, the defendant’s measurement mistake was the reason that the defendant was unable to obtain the complete set of cabinets needed within his stated time frame. Furthermore, the plaintiff claims that there was no additional cabinet ordered which was never delivered; rather, there was only the one cabinet which had to be reordered due to an error in measurement by the defendant. Another cabinet had to be ordered in the second order by defendant due to his own omission in ordering this cabinet originally.
In finding for the plaintiff on this portion of the lawsuit, the trial judge stated as follows:
“... The evidence bears out that there was a mistake in the size of one (1) cabinet when ordered and that the mistake left a space that had to be filled in by the contractor. The filler units were supplied and later rejected after installation. The Court is of the opinion that the mistake was the fault of the defendant not the fault of plaintiff.” Reasons for Judgment, p. 1.
This case basically involved a factual determination by the trial judge as to the nature of the agreement between these two parties and a credibility determination on the conflicting testimony given by these parties. The record supports the plaintiffs claim that only one cabinet had to be reordered in this case and that this order was necessitated by the defendant’s error in the measurement relayed to the plaintiff in the original telephone order. The other cabinet ordered by the defendant at that time was omitted by him in his original order by his own admission (Tr. 47). There is no evidence to support defendant’s claim that this agreement was subject to any suspen-sive condition or that the defendant was entitled to return and receive credit for items which had been specially ordered for him. Therefore, it cannot be said that the factual determination of the trial judge on this issue was manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Additionally, it does not appear that the trial judge abused his discretion in his credibility determination in this case.
The second dispute between the parties in this case involved the special order by the defendant from the plaintiff of cabinets manufactured by the Schrock company and referred to as the “Hallmark Hickory” style. When plaintiff placed this order with this manufacturer, he was informed that delivery of these particular cabinets could not be made within the time requested by the defendant. After plaintiff informed defendant of this development, the defendant requested that the plaintiff find another cabinet line in hickory that could be delivered within the specified time frame. The plaintiff later notified the defendant that he had found a line of cabinets in his stock called “Jim Bishop” cabinets which were made by a different manufacturer but which were of the same design and of a similar color as the Hallmark Hickory cabinets. A representative of the defendant went to Louisiana Wholesale and inspected one of the cabinets, approved the color, quality and size, and accepted the merchandise. The defendant later informed the plaintiff that the Jim Bishop cabinets were unacceptable to its customer and that it wanted to return the cabinets and have its account credited for this merchandise. The defendant explained that the reason that these cabinets were unacceptable was because they were of much poorer quality and of a totally different color than the Hallmark Hickory cabinets.
In its suit, the defendant argues that it relied on plaintiff’s representation as to the color, quality and style of the Jim Bishop cabinets and that this alleged misrepresentation caused the defendant to replace these cabinets with others acceptable to its customer at the defendant’s expense.
Again, no evidence in the record of this case supports defendant’s claim that the sale of the Jim Bishop cabinets was subject to any suspensive condition. Any objection which the defendant had as to plaintiff’s representation of these substitute cabinets being of the same style, quality and color as the originally ordered cabi *286 nets was waived when a representative of the defendant company inspected one of the cabinets and approved of the color, quality and style before accepting delivery of this merchandise. In his reasons for judgment, the trial judge stated that because defendant’s representative had an opportunity to view and inspect the substitute cabinets and because this representative declared to the plaintiff that the merchandise was satisfactory, the sale was completed at that time and the defendant cannot now avoid this sale due to its customer’s dissatisfaction. A review of the record in this case does not indicate any manifest error in this factual determination of the trial judge. Arceneaux v. Domingue, supra.
For the reasons stated above, the trial judge also correctly dismissed defendant’s reconventional demand. Therefore, the judgment of the trial court is affirmed.
AFFIRMED